UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
EVELYN CANDELARIA,

                              Plaintiff,

      -against-

MORGAN SPURLOCK and THE CON,

                             Defendants.

---------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

08 Civ. 1830 (BMC)(RER)

**Cogan**, District Judge.

      Plaintiff brought this action in state court, asserting claims under New York Civil Rights Law § 51 ("NYCRL § 51") and under New York common law for the allegedly unlawful use of her image. Defendant removed this action to this Court based on diversity jurisdiction. When defendant Spurlock advised the Court that he intended to move to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), the Court ordered the parties to file a joint letter describing the facts, the law, and their positions regarding the motion.[1] Upon reviewing that letter, the Court suggested, and the parties agreed, that their joint letter would constitute the motion to dismiss and response thereto. The Court then scheduled oral argument. Based on the parties' submissions and arguments, the motion to dismiss is GRANTED.

## BACKGROUND

      This case arises from the three or four seconds in which plaintiff's image appears in defendant's documentary film, "Super Size Me" (the "movie").[2] The movie was released in

---

[1] The co-defendant has not been served. The Court will therefore refer only to Spurlock as defendant.

[2] There was initially some confusion over exactly who plaintiff is, where she appeared in the movie and whether she spoke in the segment in which she appeared. The parties have resolved these issues, identified plaintiff and have agreed that plaintiff's voice is not used in the movie.

theaters in 2004. It is a documentary film which follows defendant, the writer, director, producer and star of the movie for a 30 day period as he subsists entirely on food purchased from McDonald's restaurants throughout the country. The movie aims to educate its audience about the epidemic of obesity and health risks associated with eating fast-food. The movie was nominated for an Academy Award for Documentary Feature.

The movie contains several scenes inside McDonald's locations where defendant is seen ordering and consuming food. In the clip at issue in this litigation, plaintiff appears as a McDonald's employee for approximately three to four seconds in a scene discussing the nutritional content of McDonald's offerings and the availability of this information to the public. From my viewing of the film and the specific clip at issue, plaintiff does not say anything. In fact, plaintiff's appearance is extremely brief and is essentially part of a montage sequence where defendant requests the nutritional chart from various McDonald's restaurants. However, defendant never obtained plaintiff's consent to use her image, and plaintiff maintains that defendant used a hidden camera to capture her image.

## DISCUSSION

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Cleveland v. Caplaw Enterp., 448 F.3d 518, 521 (2d Cir. 2006). In addition, because the complaint relies heavily on the movie, the Court may consider the movie in evaluating the complaint under Rule 12(b)(6). See Brass v. American Film Techns., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (finding that courts may consider documents incorporated by reference in the pleadings).

I.    Plaintiff's NYCRL § 51 Claim

No common-law right of privacy exists under New York law. See Hurwitz v. United States, 884 F.2d 684, 687 (2d Cir. 1989); Messenger v. Gruner Key Symbol Jahr Printing and Publ'g, 94 N.Y.2d 436, 441, 706 N.Y.S.2d 52, 54 (2000). Instead, New York has a statute, NYCRL § 51, which provides a cause of action for "[a]ny person whose name, portrait, picture or voice is used within [New York] for advertising purposes or for the purposes of trade without" their written consent.  To state a claim under NYCRL § 51, a plaintiff must allege: (1) the use of his name, portrait, or likeness; (2) for "advertising purposes or for the purposes of trade;" (3) without written permission. See Titan Sports, Inc. v. Comics World Corp., 870 F.2d 85, 87 (2d Cir. 1989); Arrington v. New York Times Co., 55 N.Y.2d 433, 438 n.1, 449 N.Y.S.2d 941 (1982).

The parties do not dispute that plaintiff has satisfied factors (1) and (3). Therefore, the only question here is whether plaintiff meets the second prong, that is, was her likeness used for "advertising purposes or for the purposes of trade" within the meaning of NYCRL § 51. Notably, New York courts have held that this section "is to be narrowly construed." Messenger, 94 N.Y.2d at 441, 706 N.Y.S.2d at 55. Courts have created an exception to this prong for the nonconsensual use of a plaintiff's image to depict "newsworthy events or matters of public interest." Lemerond v. Twentieth Century Fox Film Corp., No. 07 Civ. 4635, 2008 WL 918579, *2 (S.D.N.Y. Mar. 31, 2008) (citing Stephano v. News Group Publ'ng, Inc., 64 N.Y.2d 174, 184, 485 N.Y.S.2d 220, 224-25 (1984)). Courts have stated that this "newsworthiness" exception should be applied broadly and should include "not only descriptions of actual events, but also articles concerning political happenings, social trends or any subject of public interest." Messenger, 94 N.Y.2d at 441-42, 706 N.Y.S.2d at 55.

The question of whether something is newsworthy is a question of law for the courts to decide. See Lemerond, 2008 WL 918579, at *2 (citing Freihofer v. Hearst Corp., 65 N.Y.2d 135, 140-41, 490 N.Y.S.2d 735, 739 (1985)). As the Lemerond court explained:

> In determining whether an item is newsworthy, courts consider solely the "content of the article" – not the publisher's "motive to increase circulation." Furthermore, courts should be wary not to "supplant the editorial judgment of the media in determining what is 'newsworthy' or of 'public interest.' Consequently, "public interest" and "newsworthy" have "been defined in most liberal and far reaching terms."

2008 WL 918579, at *2 (internal quotations omitted).

New York courts have also created an exception under NYCRL § 51 for "incidental" uses of a person's likeness. See D'Andrea v. Rafla-Demetrious, 972 F.Supp. 154, 157 (E.D.N.Y. 1997). In order to establish liability under the statute, a plaintiff must demonstrate a "direct and substantial connection between the appearance of the plaintiff's name or likeness and the main purpose and subject of the work." Netzer v. Continuity Graphic Associates, Inc., 963 F.Supp. 1308, 1326 (S.D.N.Y. 1997) (quoting Preston v. Martin Bregman Productions, Inc., 765 F.Supp. 116, 120 (S.D.N.Y. 1991)). Courts have found that "isolated" or "fleeting and incidental" uses of a person's name or image, even if unauthorized, are insufficient to establish liability. D'Andrea, 972 F.Supp. at 157 (citing University of Notre Dame Du Lac v. Twentieth Century-Fox, 22 A.D.2d 452, 454, 256 N.Y.S.2d 301, 304 (1st Dep't), aff'd, 15 N.Y.2d 940, 259 N.Y.S.2d 832 (1965)).

As to the newsworthiness exception, courts have found this exception to apply in a number of cases that are factually similar to the case before the Court. For example, in Walter v. NBC Television Networks, Inc., 27 A.D.3d 1069, 811 N.Y.S.2d 521 (4th Dep't 2006), the court found the use of plaintiff's image in the "Headlines" segment of Jay Leno's "The Tonight Show" not actionable because the segment was deemed newsworthy. In Lemerond, a plaintiff who

appeared in the film "Borat" brought suit after appearing on screen for approximately 13 seconds in a scene where the character Borat greeted the plaintiff on the street and the plaintiff ran away in apparent terror. Although the plaintiff appeared twice in that movie and even once in a trailer advertisement, the district court found that the newsworthiness exception was met. See Lemerond, 2008 WL 918579, at *3 ("Of course, the movie employs as its chief medium a brand of humor that appeals to the most childish and vulgar in its viewers. At its core, however, Borat attempts an ironic commentary of "modern" American culture, contrasting the backwardness of its protagonist with the social ills afflict[ing] supposedly sophisticated society."). This exception was also found in Delan by Delan v. CBS, Inc., 91 A.D.2d 255, 458 N.Y.S.2d 608 (2d Dep't 1983) (use of mental patient's name and image in a documentary film concerning the deinstitutionalization of mental patients where the plaintiff's picture appeared for approximately four seconds was considered an issue of public interest and therefore not actionable); Weil v. Johnson, Index No. 119431/02, 2002 WL 31972157, *4-5 (Sup.Ct. N.Y. Co. Sept 27, 2002) (documentary on lives of children from wealthy families was of public interest).

Plaintiff argues, however, that this case is more akin to the facts in Beverley v. Choice Women's Med. Ctr., 141 A.D.2d 89, 532 N.Y.S.2d 400 (2d Dep't 1988), aff'd, 78 N.Y.2d 745, 579 N.Y.S.2d 637 (1991) and Cornwell v. Sachs, 99 F.Supp.2d 695 (E.D. Va. 2000).[3] In Beverley, the physician plaintiff brought suit against a medical center for unauthorized appropriation of her picture and defamation arising from use of her photograph in the medical center's calendar. The court found that it was clearly a solicitation for commercial use and an

---

[3] To the extent that plaintiff is arguing that these cases stand for the proposition that the newsworthiness exception may only be invoked by media defendants, the Court finds that this reading is incorrect. Although both cases dealt with instances where a non-media defendant unsuccessfully attempted to invoke this exception, neither court's holding was based on this factor. In addition, even if this point were valid, the entities who actually broadcast the movie to which defendant seeks to apply the newsworthiness exception are members of the media. See Zoll v. Jordache Enterprises Inc., No. 01 Civ. 1339, 2003 WL 1964054, *6 (S.D.N.Y. Apr. 24, 2003) ("the immediate 'publisher' of the news programs was a member of the media, rendering plaintiff's contention that the scope of the newsworthiness exception does not encompass non-media members somewhat beside the point").

advertisement in disguise. That case is different from the one here because in <u>Beverley</u>, the calendar was distributed as a solicitation for patronage of a collateral service. The court found that the "the calendar is no different than a circular promoting safes, a handbill promoting a union, a pamphlet promoting electrolysis equipment, a manual promoting a particular camera, or a booklet promoting a particular merchandising company, which have all been held to be advertisements." <u>Id.</u> at 404.

In <u>Cornwell</u>, a world renowned author filed a suit against a local author asserting a violation of Virginia's privacy statute, which is substantially similar to NYCRL § 51. The defendant, claiming that the plaintiff had previously copied his ideas, affixed a sticker to the front of his book which read, "The book that famous PATRICIA CORNWELL threatened to destroy." The court found that the defendant used the sticker to increase sales and to invoke a fabricated scandal unrelated to the topic of the book. The court therefore held that the unauthorized use of the plaintiff's name was not protected by the newsworthiness exception to the Virginia statute. The court also found "that while the 'factual reporting of newsworthy persons and events is in the public interest and is protected,' the 'fictitious is not.'" 99 F.Supp.2d at 713 (quoting <u>Spahn v. Julian Messner</u>, Inc. 18 N.Y.2d 324, 328, 274 N.Y.S.2d 877, 879 (1966)). Unlike the situation in <u>Cornwell</u>, defendant here attempted to factually report on a newsworthy issue and not to fabricate a story.

New York courts have also applied the incidental use exception in a number of cases. For example, in <u>Preston v. Martin Bregman Productions, Inc.</u>, 765 F.Supp. 116 (S.D.N.Y. 1999), the court found that a defendant who used a woman's image as a prostitute in the opening scene of a movie for approximately nine seconds met the incidental use exception. <u>See also</u> <u>Man v. Warner Bros.</u>, Inc., 317 F.Supp. 50, 53 (S.D.N.Y. 1970) ("the incidental use of plaintiff's forty-

five second performance in defendants' motion picture ... is surely de minimus" and is not actionable); Netzer, 963 F.Supp. at 1326 ("isolated use of [plaintiff's] previous name and current surname" in a twenty-four page comic book is not actionable); University of Notre Dame Du Lac, 22 A.D.2d 452, 256 N.Y.S.2d 301 (1st Dep't 1965) (two isolated references to plaintiff's name in a 143-page book do not offend the Civil Rights Law).

Having considered these principles and cases, it is clear that the movie here meets both the newsworthiness and incidental use exceptions to NYCRL § 51. The movie aims to educate and address in detail the obesity epidemic and related health risks associated with eating fast-food. The fact that this movie garnered so much attention and earned a profit is of no moment. See Lederman, 2008 WL 918579, at *3 n.1 (citing Man, 317 F.Supp. at 52, for the position that "the mere fact that defendants are spurred by the profit motive and engaged in the commercial exploitation of [a] motion picture does not negate their right to depict a matter of public interest"). Furthermore, the movie is also more than an advertisement and serves a more public purpose than the calendar in Beverley. It also addresses a genuine newsworthy issue unlike the situation in Cornwell.

Although plaintiff contends that defendant's portrayal of the health effects of consuming fast-food are unscientific, the movie does not need to meet such a strict standard to satisfy the newsworthiness exception. Plaintiff's argument rests on decisions like Spahn v. Julian Messner, Inc., 21 N.Y.2d 124, 286 N.Y.S.2d 832 (1967) (finding that a biography of a baseball player that was almost entirely imaginary and dramatized was too fictitious to be considered newsworthy) and Binns v. Vitagraph Co., 210 N.Y. 51 (1913) (holding that a film about the rescue of a shipwrecked boat that was "mainly a product of the imagination" was not newsworthy as it was not designed to "instruct or educate" the audience). Some courts have addressed the fact that

these two older cases appear to conflict with more recent decisions that seem to apply a broader reading of the newsworthiness doctrine. However, the court in Messenger specifically found that there was no "inherent tension" because a publication "may be so infected with fiction, dramatization or embellishment that it cannot be said to fulfill the purpose of the newsworthiness exception." 94 N.Y.2d at 446, 706 N.Y.S.2d at 58. In addition, the Messenger court distinguished its case, the use of an aspiring model's photographs in a fictionalized way but in conjunction with a newsworthy article, with the facts in Spahn and Binns. The court found that the "unauthorized, and allegedly false and damaging" use of photographs to illustrate articles deemed newsworthy is different than what was at issue in the Spahn and Binns because in Messenger "there was a real relationship between the photographs and the articles, and because the articles were not advertisements in disguise." Id.

This case does not have the same set of concerns that were at issue in Spahn and Binns. Although, as previously noted, defendant's "study" of the effects of a fast-food diet on an individual's health was far from scientific, the movie was not "so infected with fiction, dramatization or embellishment" so as to not meet the newsworthiness exception. In fact, defendant did not purport to make a scientific study but rather chronicled his own bizarre experiment solely eating McDonald's food for thirty days. Plaintiff may dispute the educational value of the movie, just as someone may dispute an editorial's conclusions, but this disagreement does not make the movie any less newsworthy. Furthermore, like the photograph in Messenger, plaintiff's image bears a "real relationship" to the movie. Id. The clip of plaintiff, together with others in the sequence, shows that it is difficult for McDonald's patrons to obtain nutritional information on the food served. The clip directly relates to one theme in the movie, that is, that the public lacks knowledge of the detrimental health effects associated with eating this type of

food. Therefore, the movie falls within the wide scope of what New York courts have held to be newsworthy matters.

Plaintiff's appearance in the movie also meets the incidental use exception. Like the other films and articles discussed, plaintiff is on camera for a very brief period – three to four seconds. It would be impossible to reasonably characterize plaintiff's time on camera as anything more than "fleeting." In fact, her appearance was considerably shorter than the plaintiffs in the other films discussed, and unlike the plaintiff in "Borat," plaintiff here never spoke and has not alleged that her appearance was ever used in any advertisement/trailer for the movie.

At oral argument, plaintiff asserted that the Court should not apply these exceptions because defendant filmed plaintiff with the use of a hidden camera. The premise of plaintiff's argument is that courts need to establish some barriers to protect people from such unknowing invasions of their privacy. However, New York courts have interpreted NYCRL § 51 to permit the use of a plaintiff's image even if the plaintiff was unaware that she was being filmed or photographed. See Arrington, 55 N.Y.2d 433, 449 N.Y.S.2d 941 (finding the newsworthiness exception met when defendant published an article on the expanding black middle class featuring the plaintiff's image even though plaintiff had no prior knowledge that his photograph had been taken). As the Arrington court stated:

> No more persuasive is plaintiff's perfectly understandable preference that his photograph not have been employed in this manner and in this connection. However, other than in the purely commercial setting covered by sections 50 and 51, an inability to vindicate a personal predilection for greater privacy may be part of the price every person must be prepared to pay for a society in which information and opinion flow freely.

55 N.Y.2d at 441-42; 449 N.Y.S.2d at 945. Here, plaintiff was not filmed in her home or any other location in which she could reasonably expect not to be filmed. She was at the counter of a

McDonald's, meeting dozens if not hundreds of members of the public in the course of her shift every day. She had no reasonable expectation of privacy while doing so.

Therefore, all claims arising under this statute must be dismissed.[4]

II. <u>Plaintiff's Common Law Claims</u>[5]

Plaintiff also asserted common-law claims in the complaint but failed to address them in the joint letter to the Court. However, as noted previously, New York does not recognize a common-law right of privacy. See <u>Hurwitz</u>, 884 F.2d at 687; <u>Messenger</u>, 94 N.Y.2d at 441.

III. <u>Leave to Amend</u>

Fed.R.Civ.P. 15(a) provides that a plaintiff may amend the complaint once as a matter of right any time before a responsive pleading is served. However, once a defendant answers the complaint, a plaintiff may only amend the pleadings with the consent of the opposing party or permission of the court. See Fed.R.Civ.P. 15(a). Courts "should freely give leave when justice so requires." See Fed.R.Civ.P. 15(a)(2). Nevertheless, if such an amendment would be futile, a district court may deny leave to amend. See <u>Hom Sui Ching v. U.S.</u>, 298 F.3d 174, 180 (2d Cir. 2002) (citing <u>Jones v. N.Y. State Div. of Military & Naval Affairs</u>, 166 F.3d 45, 50 (2d Cir. 1999)). An amendment is futile if the amended complaint would be subject to dismissal for failure to state a claim upon which relief may be granted. See <u>Milanese and Milanese v. Rust-Oleum Corp.</u>, 244 F.3d 104, 110 (2d Cir. 2003) ("leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss"). Here, plaintiff requests

---

[4] Defendant also argues that the statute of limitations bars plaintiff's claims under NYCRL § 51. Plaintiff disputes this position on the basis that although the film was released in 2004, both in theaters and on DVD, it has subsequently been republished and altered from its original broadcast. However, the Court does not need to and in fact, may not even be able to reach this issue on defendant's motion to dismiss.

[5] Although unclear, plaintiff may also be alleging a claim for intentional infliction of emotional distress. Plaintiff does not address this potential claim at all in her response to defendant's motion to dismiss. Nevertheless, plaintiff has failed to allege the necessary elements of such a claim. See <u>Fischer v. Maloney</u>, 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991 (1978) (finding that such a claim arises when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another").

that the Court allow plaintiff leave to file an amended complaint if it determines that plaintiff has failed to state a claim. For the reasons stated above, the Court concludes that it would be futile to allow plaintiff to amend her complaint as it would not withstand a 12(b)(6) motion to dismiss. The deficiency of the complaint here is not a failure to include particular allegations. Rather, it is that the law offers no viable theory of recovery under all of the facts giving rise to this case.

## CONCLUSION

The motion to dismiss the complaint is granted.

**SO ORDERED.**

S/ BRIAN M. COGAN
U.S.D.J.

Dated: Brooklyn, New York
July 3, 2008